FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 14, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMIE M.,<br><br>                Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>                Defendant. | No: 1:20-CV-03118-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 16. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney D. James Tree. Defendant is represented by Special Assistant United States Attorney Lisa Goldoftas. The

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~1

1  Court, having reviewed the administrative record and the parties' briefing, is fully

2  informed.  For the reasons discussed below, the Court **GRANTS, in part,**

3  Plaintiff's Motion for Summary Judgment, ECF No. 13, **DENIES** Defendant's

4  Motion for Summary Judgment, ECF No. 16, and **REMANDS** the case for to the

5  Commissioner for additional proceedings.

## JURISDICTION

Plaintiff Jamie M.[2] filed an application for Supplemental Security Income (SSI) on December 21, 2016, Tr. 78, alleging disability since February 28, 1989, Tr. 180, due to a specific learning disability, depression with suicidal thoughts, anxiety, diabetes, sleep paralysis, asthma, hypertension, allergic rhinitis, anger, and microabuminuria diabetic neuropathy, Tr. 205.  Benefits were denied initially, Tr. 107-10, and upon reconsideration, Tr. 114-20.  A hearing before Administrative Law Judge Kimberly Boyce ("ALJ") was conducted on June 17, 2019.  Tr. 32-74.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the testimony of vocational expert Robert Simmons.  *Id*.  At the hearing, Plaintiff amended his onset date to December 21, 2016, which was also the date of application.  Tr. 36.  The ALJ denied benefits on July 19, 2019.  Tr. 15-27.  The

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~2

Appeals Council denied Plaintiff's request for review on June 11, 2020. Tr. 1-5. The matter is now before this Court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3). ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 32 years old at the amended onset date. Tr. 180. He completed high school in 2002. Tr. 206. At application, he reported a work history including jobs as a cashier, caster, and general laborer. Tr. 207. He stated that he stopped working on June 30, 2014, due to his conditions and other reasons: "they just called me one day and told me not to come back in." Tr. 206. After his application, the Washington Division of Vocational Rehabilitation put Plaintiff through welding school, and he worked as a welder from June to September of 2018. Tr. 39, 312.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~3

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id*.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~4

months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity (SGA), the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in SGA, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in SGA. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~6

adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had engaged in SGA from June 14, 2018 through September 28, 2018. Tr. 17. However, the ALJ found that there has been a continuous twelve-month period during which Plaintiff did not engage in SGA. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder; generalized anxiety disorder; personality disorder; and learning disability with average IQ. Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then found that Plaintiff has the RFC to perform work at all exertional levels with the following nonexertional limitations:

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~7

> The claimant can perform work in which concentrated exposure to respiratory irritants is not present. He can understand, remember, and carry out simple, routine tasks and follow short, simple instructions. He can perform work that requires little or no judgment and can perform simple duties that can be learned on the job in a short period. The claimant can cope with occasional, routine interaction with supervisors. He can perform work that does not require strict adherence to time limits for each task performed, such as in an assembly line, but can complete required tasks at a variable pace throughout the course of an 8-hour workday. He can work in proximity to coworkers, but not in a team or cooperative effort. The claimant can perform work that does not require interaction with the general public as an essential element of the job, but occasional, incidental contact is not precluded.

Tr. 20. At step four, the ALJ identified Plaintiff's past relevant work as a welder and found that Plaintiff is not capable of performing this past relevant work. Tr. 26. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: housekeeper; collator; and solderer. Tr. 26-27. On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from December 21, 2016, the date of application, through the date of her decision. Tr. 27.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying him SSI benefits under Title XVI of the Social Security Act. ECF No. 13. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred at step one;
2. Whether the ALJ erred at step two;

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~8

3. Whether the ALJ erred in her treatment of the medical opinions; and

4. Whether the ALJ properly addressed Plaintiff's symptom statements.

## DISCUSSION

**1.  Step One**

Plaintiff challenges the ALJ's finding that he engaged in SGA in 2018, by asserting that the work qualified as an unsuccessful work attempt. ECF No. 13 at 4-5.

A claimant is not disabled at step one if he engages in SGA. 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). If a claimant's earned wages meet or exceed the amounts the agency calculates as SGA, then the earnings create a rebuttable presumption that the claimant is not disabled during the periods he worked at that level. 20 C.F.R. § 416.974; *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001); *see also* POMS DI 10501.015 (listing the amounts).

An unsuccessful work attempt is an exception to the SGA rule. 20 C.F.R. § 416.974(a)(1). Work performed during an unsuccessful work attempt will not show that a claimant can perform SGA. 20 C.F.R. § 416.974(c). For a period to qualify as an unsuccessful work attempt, it must meet three requirements: (1) there must be a significant break in the continuity of work before an individual can begin an unsuccessful work attempt, 20 C.F.R. § 416.974(c)(2); (2) the work lasted six months or less, 20 C.F.R. § 416.974(c)(3); and (3) the claimant's impairment caused him to stop working or reduce his earnings to below SGA levels. 20 C.F.R.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~9

§ 416.974(c)(1).

Here, there is evidence to support a finding that Plaintiff's work in 2018 qualifies as an unsuccessful work attempt despite evidence showing that his earnings exceeded SGA levels, *See* Tr. 200 (showing earnings for $8,099.00): (1) Plaintiff did not work for three years prior to 2018, Tr. 199-200; (2) the work lasted only four months, Tr. 312 (from June 14, 2018 to September 28, 2018); and (3) Plaintiff alleged that he stopped working due to his impairments, Tr. 54. Therefore, there is evidence in the record to support an unsuccessful work attempt, and the ALJ's failure to address this at step one is an error.

Defendant argues that the error would be harmless because the ALJ continued through the sequential evaluation process. ECF No. 16 at 4-5. However, the ALJ relied on Plaintiff's attempts to work as a reason to reject his symptom statements. Tr. 22. Therefore, this error is not harmless. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

**2.  Step Two**

Plaintiff challenges the ALJ's determination that his diabetes was not severe at step two. ECF No. 13 at 5-7.

Step two of the sequential evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~10

impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id*. at 1290.

To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921. "[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairments(s) are severe. *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

In her step two determination, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder; generalized anxiety disorder; personality disorder; learning disability with average IQ. Tr. 17. The ALJ discussed Plaintiff's diabetes, but found the impairment was not severe:

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~11

> The claimant was diagnosed with type II diabetes mellitus for which he is prescribed metformin (B10F42).  He does not take insulin and has no history of retinopathy, but has a machine at home to check his blood sugar, which he has failed to do at times (B5F6; B10F42).  In July 2017, has hemoglobin A1c level was recorded as 8.3% (*Id*).  By May 2018, it had dropped to 7.6% (B10F23).  Behaviorally, he told providers that he does exercise, but finds it difficult to eat healthy, which suggests this impairment is less bothersome than alleged (*Id*).  There is little evidence this impairment caused any significant limitation in the claimant's ability to perform basic, work-related activities for a continuous twelve-month period, and it is therefore non-severe.

Tr. 18.  However, the ALJ's implied finding that Plaintiff's diabetes improved is not supported by substantial evidence.  The ALJ failed recognize Plaintiff's consistently high A1c demonstrating a lack of control over his blood sugar.  *See* Tr. 334 (November 7, 2016 A1c 11.9%), Tr. 397 (February 27, 2017 A1c 7.9%), Tr. 444 (July of 2017 A1c 8.3%,  February of 2018 A1c 9.4%, and May 21, 2018 A1c 7.6%), Tr. 435 (October 7, 2018 A1c 9.0%), Tr. 434 (October 15, 2018 A1c 7.3%).[3]  The ALJ also did not discuss the symptoms Plaintiff reported from his

---

[3] "Glycated A1c is normally no higher than about 6 – 7%, and total glycated hemoglobin (GHB) is about 2 – 3% higher than whatever the reported normal A1c level.  Progressively poorer control of blood glucose levels is indicated by higher levels of A1c.  There is no standardization of meaning between authorities regarding the actual A1c levels representing 'good,' 'fair,' or 'poor' control of blood glucose, so use of these adjectives is not entirely informative without actual numbers.  Assuming a normal A1c level of 6 – 7%, this may be considered good

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~12

diabetes and diabetic medications including diarrhea, which interfered with his work, Tr. 267, 433, 437, and neuropathy, Tr. 261.  Here, the ALJ's failure to discuss the continually fluctuating high A1c while ignoring Plaintiff's reported systems resulted in no physical impairments being found severe at step two.  This was an error.  On remand, the ALJ will properly consider Plaintiff's diabetes at step two.

**2.    Medical Opinions**

Plaintiff challenges the weight the ALJ assigned to the opinions of Bridget Beachy, Psy.D., R. Cline, Psy.D., T. Genthe, Ph.D., and B. VanFossen, Ph.D.  ECF No. 13 at 16-21.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

---

control.  Fair control is present at A1c levels in the 7 – 8% range and poor control levels higher than 9 – 10%.  It should be emphasized that the goal of treatment of diabetes mellites is to maintain tight control of blood glucose levels because this is necessary to minimize diabetic complications.  In this light, anything worse than 'good' control is not acceptable if better control can be achieved."  2 DAVID A. MORTON, III, M.D., SOCIAL SECURITY DISABILITY MEDICAL TESTS § 9.17 (1st ed. 2015).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~13

[but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id*.

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

A.     **Bridget Beachy, Psy.D.**

On June 28, 2018, Dr. Beachy completed a Mental Source Statement.  Tr. 403-06.  She completed a mental RFC and opined that Plaintiff had a marked

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~14

limitation in the ability to carry out detailed instructions. Tr. 403. She also opined that Plaintiff had a moderate limitation in nine other basic work activities. Tr. 403-05. Additionally, Dr. Beachy opined that Plaintiff had a moderate limitation in the "B" Criteria of the 12.00 Mental Listings and met the "C" Criteria of the 12.00 Mental Listings. Tr. 405. When asked what percentage of time Plaintiff would likely be off-task during the 40-hour week schedule, she stated it was "[h]ard to say, likely around 20-25%." Tr. 405. She opined that if Plaintiff attempted a 40-hour work week, he would likely miss four or more days per month. Tr. 405. The ALJ gave the opinion some weight:

> Dr. Beachy is a treating provider, her opinion related to marginal adjustment for 2 years is not consistent with treatment records showing the claimant did not consistently engage in treatment during that time. Additionally, her opinion related to off-task behavior appears unclear in her statement that it is "hard to say" and is not shared by other medical opinions. It also does not appear consistent with treatment records, showing relatively benign observations and situational component, the claimant's performance on mental status and other examinations, and the claimant's activities, showing he can attend welding school full-time, regularly attend the gym, engage in social activities, and pursue employment.

Tr. 24.

The ALJ rejected the mental RFC opinion because it was inconsistent with the records and Plaintiff's activities. Tr. 24. However, the ALJ failed to state specifically how the mental RFC opinion was undermined either by the treatment record or Plaintiff's activities. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~15

clinical evidence, stating her interpretation thereof, and making findings. *Magallanes*, 881 F.2d at 751. The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. Therefore, this reason does not meet the specific and legitimate standard.

The ALJ rejected the portion of the opinion pertaining to the "C" criteria of the 12.00 Mental Listings by finding that Dr. Beachy had only been treating Plaintiff for four months and the listing requires ongoing treatment with marginal adjustment for at least two years. Tr. 24. This is a specific reason to reject Dr. Beachy's opinion that Plaintiff met the "C" criteria of the 12.00 Mental Listings, but it is not a specific and legitimate reason for rejecting portions of the mental RFC opined by Dr. Beachy.

The ALJ rejected the portion of the opinion that Plaintiff would be off task because Dr. Beachy stated it would be "hard to say." Tr. 24. The ALJ is tasked with resolving ambiguities in the evidence, *Andrews*, 53 F.3d at 1039. Therefore, the Court will not disturb her rejection of this portion of the opinion based on Dr. Beachy's statement that it is "hard to say." However, Dr. Beachy's mental RFC opinion regarding the other basic work activities were not ambiguous. A marked limitation is defined as "[v]ery significant interference with basic work-related activities i.e., unable to perform the described mental activity for more than 33% of the work day," and a moderate limitation is defined as "[s]ignificant interference

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~16

with basic work-related activities, i.e., unable to perform the described mental activity for at least 20% of the work day up to 33% of the work day." Tr. 403 (defining the terms marked and moderate). Therefore, the ALJ has failed to provide a specific and legitimate reason for rejecting the mental RFC opinion from Dr. Beachy. On remand, the ALJ will properly address the metal RFC from Dr. Beachy.

### B.  R.A. Cline, Psy.D., Thomas Genthe, Ph.D., B. VanFossen, Ph.D.

Plaintiff also challenges the ALJ's treatment of the opinions from Dr. Cline, Dr. Genthe, and Dr. VanFossen. ECF No. 13 at 20-21. These providers also provided mental RFC opinions. Tr. 344-45, 354, 409-10. This case is being remanded for the ALJ to properly address the mental RFC opinion from Dr. Beachy. On remand, the ALJ will also address the opinions from these providers.

### 4. Plaintiff's Symptom Statements

Plaintiff challenges the ALJ's treatment of his symptom statements. ECF No. 13 at 7-16.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281;

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~17

*Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 21. The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. § 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to readdress the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary.

## CONCLUSION

Plaintiff requests that the Court remand the case for an immediate award of benefits. ECF No. 17 at 10-11.

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these

conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96; *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ should make a new step one determination addressing Plaintiff's work in 2018, make a new step two determination addressing Plaintiff's diabetes, readdress the medical opinions in the record concerning Plaintiff's mental RFC, and readdress Plaintiff's symptom statements. In addition, the ALJ should supplement the record with any outstanding medical evidence and take additional testimony from a vocational expert at any remand proceedings.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED, in part,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~19

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** September 14, 2021.

                                       *s/ Rosanna Malouf Peterson*
                                       ROSANNA MALOUF PETERSON
                                          United States District Judge